**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1414**

_____

TODD BERMAN,

   Plaintiff – Appellant,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, d/b/a
FedLoan Servicing,

   Defendant – Appellee.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at
Greensboro. Loretta C. Biggs, District Judge. (1:21-cv-00063-LCB-JLW)

_____

Submitted:  February 29, 2024       Decided:  April 15, 2024

_____

Before DIAZ, Chief Judge, and HARRIS and HEYTENS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Heytens wrote the opinion, which Chief Judge
Diaz and Judge Harris joined.

_____

**ON BRIEF:** Jonathan A. Vogel, VOGEL LAW FIRM PLLC, Charlotte, North Carolina,
for Appellant. Christopher R. Healy, Philadelphia, Pennsylvania, Justin G. Weber,
Harrisburg, Pennsylvania, Ethan J. Ostroff, TROUTMAN PEPPER HAMILTON
SANDERS LLP, Virginia Beach, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

TOBY HEYTENS, Circuit Judge:

Asserting its actions cost him the chance to have his student loans forgiven, Todd Berman sued the Pennsylvania Higher Education Assistance Agency. The district court concluded the Agency was entitled to derivative sovereign immunity and dismissed Berman's complaint. We affirm.

Berman obtained two student loans directly from the Department of Education. The Department contracted with the Agency to service certain loans. Among the Agency's responsibilities was administering loans that might be eligible for cancellation under the Public Service Loan Forgiveness program, which requires borrowers to make ten years of payments while working for a qualifying public service employer. The Agency did so by processing employment certification forms submitted by borrowers and "notify[ing]" those borrowers of "the number of qualifying payments made while employed in qualifying public service." JA 837.

After spending four years in the United States Army (which all agree is a qualifying public service employer), Berman went to work for Blue Cross Blue Shield of North Carolina. This raised a question: Is Blue Cross also a qualifying public service employer?

Unfortunately, Berman received conflicting answers to that question. Berman asserts that, until 2018, the Agency repeatedly told him his Blue Cross job qualified for loan forgiveness. In doing so, the Agency relied on then-existing guidance from the Department about a similar employer—Blue Cross Blue Shield of Rhode Island.

By the time Berman submitted a second employment certification form, however, the Department had reversed course. In March 2018, the Agency sent Berman a letter

2

stating that, "after consulting with the Department of Education," it had determined that "BlueCross BlueShield of North Carolina does not provide a qualifying service as part of its primary purpose . . . and therefore cannot be approved under public health for [loan forgiveness] purposes." JA 131. After receiving that letter, Berman consolidated his federal loans into private loans, which eliminated any possibility for loan forgiveness. A year later, however, the Department "reversed it[s] decision again" (JA 900), and the Agency told Berman that Blue Cross was a qualifying employer after all.

Berman sued the Agency in federal district court, bringing four state law claims all stemming from the Agency's assertedly "false representation" that Blue Cross was not a qualifying employer. JA 24. The district court dismissed Berman's complaint for lack of subject matter jurisdiction, concluding the Agency was entitled to derivative sovereign immunity. See *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) ("[D]erivative sovereign immunity . . . confers jurisdictional immunity from suit.").[*] Reviewing that conclusion de novo, see *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002), we see no error.

The parties agree about the relevant legal framework. Under this Court's precedent, "a government contractor" like the Agency "is not subject to suit if (1) the government" (here, the Department) "authorized the contractor's actions and (2) the government validly

---

[*] Berman asserts derivative sovereign immunity is better understood as an affirmative defense that must be proven at trial. We need not consider the merits of that argument because "one panel cannot overrule another." *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc).

3

conferred that authorization, meaning it acted within its constitutional power." *Cunningham*, 888 F.3d at 643 (quotation marks and citation removed). Berman makes no argument about the second requirement. Instead, he trains his fire on the first element, insisting the Department did not, in fact, authorize the Agency's allegedly wrongful actions. Like the district court, we are unpersuaded.

Berman's argument runs into two problems. First, the Department authorized the Agency's actions by contract. See *Cunningham*, 888 F.3d at 648 (stating that the first step of the derivative sovereign immunity analysis is satisfied if a contractor "adhered to the terms of its contract with" the government). Under its contract with the Department, the Agency had to follow certain procedures for certifying private employers as eligible for public service loan forgiveness. Among the step-by-step instructions for "[v]erifying qualifying employment" was a requirement to "escalate" questions about whether a given private employer qualifies "to the Department for approval" and then "[s]end the Borrower a notification of the outcome of the review." JA 851–53. That is precisely the approach the Agency followed here in issuing the March 2018 letter.

In contrast, Berman urges an unnatural reading of the contract. The contract, Berman says, spoke only to how the Agency was to make an *initial* decision about whether a given employer qualified for loan forgiveness and was silent about how the Agency should go about "chang[ing] its prior determination." Berman Br. 18. The parties spar over whether Berman preserved this argument in the district court, but we need not resolve that question because we conclude the argument fails on the merits. The distinction Berman seeks to draw has no basis in the contract's text. It also cannot be squared with the contract's

4

requirement that, after a loan was transferred to the Agency from a different servicer—something that happened to Berman's loans—the Agency was required to "track the number of . . . *qualifying* payments made after" the transfer (JA 140 (emphasis added)), including by reviewing an employer's qualified status every time the Agency received an employment certification form.

The second problem with Berman's argument is that, even apart from the language of the contract, the Department expressly authorized the Agency's challenged actions here. Cf. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (stating that derivative sovereign immunity does not apply "[w]hen a contractor violates both federal law and the Government's explicit instructions"). Indeed, the Department told the Agency in February 2018 that it was "approved to retract Blue Cross Blue Shield of North Carolina" from eligibility for public service loan forgiveness and even asked the Agency to "send . . . a copy" of the March 2018 retraction letter for it "to review before mailing." JA 892. The Department similarly took responsibility for the decision the next year when it told the Agency that "the department has reversed its decision again" and asked if the Agency needed "help . . . with the draft response" notifying Berman about the flip-flop. JA 900. In short, the record makes clear that Department officials made the challenged decisions and told the Agency to communicate those decisions to Berman.

We are unpersuaded by Berman's argument that "emails" such as these cannot "provide the requisite government authorization" when a contract exists. Berman Reply Br. 10. To the contrary, this Court's decisions suggest that even relying on a government official's verbal authorization can be enough to confer derivative sovereign immunity to a

government contractor. See *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466–67 (4th Cir. 2000). We see no reason why the Agency could not rely on the Department's written instructions here.

\*       \*       \*

If there is a villain in this story, it is the Department—not the Agency. Berman might have sought to challenge the Department's conclusion that Blue Cross Blue Shield of North Carolina was not a qualifying public service employer via an action under the APA. See, *e.g.*, *American Bar Ass'n v. United States Dep't of Educ.*, 370 F. Supp. 3d 1, 26 (D.D.C. 2019) (entertaining a similar action). But sovereign immunity always would have prevented Berman from suing the Department for money damages, and Berman may not evade that result by suing the Department's agent instead. Indeed, the point of derivative sovereign immunity "is to prevent a government contractor from facing liability for" even wrongful conduct where that conduct was validly authorized by government officials. *Cunningham*, 888 F.3d at 648. The district court's judgment is

*AFFIRMED.*